UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-81123-CV-MIDDLEBROOKS

KINON SURFACE DESIGN, INC.,

    Plaintiff,

v.

HYATT INTERNATIONAL
CORPORATION *et al.*,

    Defendants.
_____/

## ORDER ON MOTION FOR SANCTIONS

THIS CAUSE is before the Court upon Motion for Sanctions Under Rule 11, 28 U.S.C. § 1927, and Florida Rule of Professional Conduct 4-3.3 filed by Defendants Hyatt International Corporation ("HIC"), Hyatt International Technical Services, Inc. ("HITS"), Hyatt of China Limited ("HCL"), Hyatt International Hotel Management (Beijing) Co. ("HIHC") (collectively "Defendants") on November 29, 2019. (DE 86). Defendants seek sanctions against Plaintiff Kinon Surface Design, Inc. ("Plaintiff) and Plaintiff's counsel, Mr. Joel Rothman, as well as legal fees and reasonable expenses. (DE 86 pg. 20). For the following reasons, Defendants' Motion is denied.

### BACKGROUND

This is a copyright infringement case. Plaintiff is a manufacturer of "surface designs," which are essentially panels of decorative material made of a "hand cast resin composite with various applied decorative effects." (DE 1 ¶¶ 14-14). One such surface design is Kinon Pattern Number 228 (the "Design").

On or about 2010, Plaintiff agreed to contribute its products to the construction of the Grand Hyatt Dalian (the "Hotel") in Dalian, China. (DE 1 ¶¶ 37-38, 46). In preparation, Plaintiff

1

developed the Design. Defendant China Resources purchased two 4' X 10' sheets of the Design for use in "mock-up" rooms set up in trailers at the Hotel construction site for design evaluation. (DE 1 ¶¶ 49-51). Ultimately, the construction of the Hotel was stalled, and no additional sheets were ever purchased from Plaintiff. (DE 1 ¶¶ 58, 61-62). Other than the two sheets sold to Defendant China Resources, Plaintiff never sold any other sheets of the Design. (DE 1 ¶ 70). On January 5, 2015, Plaintiff was issued Copyright Registration certificate VA 2-111-901 for the Design. (DE 1 ¶ 20).

In 2016, Plaintiff's president visited the website[1] for the Hotel and saw that in photographs of the hotel rooms, the Design was being used as a headboard. Plaintiff alleges that "China Resources . . . took the samples of Kinon's [Design] that Kinon sold to China Resources, and then used it to produce cheaper infringing versions that it obtained from Chinese infringers." (DE 1 ¶ 71). Pictures of the hotel rooms were then displayed on the Hyatt website "to advertise, market, and promote its business activities to customers around the world." (DE 1 ¶ 73).

On August 10, 2018 Kinon initiated an action ("*Kinon I*") against Hyatt Corporation ("Hyatt Corp."), who owns and operates the hyatt.com domain name where the photographs were displayed. (DE 75, 78-79). Kinon argued that "Hyatt Corp. employees in its Chicago offices obtained the photographs of the guest rooms of the Grand Hyatt Dalian, copied them, cropped them, uploaded them to the Hyatt Corp. digital asset management (DAM) system, and displayed them on the <hyatt.com> website." (DE 1 ¶ 81). *Kinon I* culminated in a jury trial wherein the jury determined, in pertinent part, that although Kinon had an enforceable copyright and had suffered a loss, Hyatt Corp. was not responsible for that loss. (DE 1 ¶¶ 91-92).

---

[1] https://dalian.grand.hyatt.com/en/hotel/

On August, 8, 2019, Kinon initiated the present case, *Kinon II*, bringing essentially the same cause of action, but asserting that other defendants committed the infringement complained of in *Kinon I*. (DE 1). Kinon alleged eight counts, five of which pertain to the Hyatt entities. First, Kinon alleges that HIC committed Copyright Infringement in violation of the U.S. Copyright Act by copying and displaying the work without Kinon's authorization. (DE 94-99). In Counts Three through Six, Kinon alleges that HIC, HITS, HLC, and HIHM committed Indirect Copyright Infringement because their subsidiaries or those in a contractual relationship with them committed a copyright violation. (DE 1 ¶¶ 105-140).

On November 6, 2019 Defendants served Mr. Rothstein with a letter and a copy of this Motion (DE 86-1). Defendants thereby complied with the requirement of Federal Rule of Civil Procedure 11 that the offending party be given 21 days to withdraw or appropriately correct the alleged deficiency before a motion for sanctions is filed. Fed.R.Civ.P. 11(c)(2).

## LEGAL STANDARD

Federal Rule of Civil Procedure 11 authorizes a district court to impose a sanction when a party presents a claim that is "not warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Rogers v. Nacchio,* 241 Fed.Appx.602, 610 (citing Fed.R.Civ.P. 11(c), (b)). Stated another way, Rule 11 sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose." *Worldwide Primates, Inc., v. McGreal,* 87 F.3d 1252, 1254 (11th Cir.1996) (citation omitted). In considering a motion for sanctions pursuant to Fed.R.Civ.P. 11, a court conducts a two-step inquiry: "(1) whether the party's

3

claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Byrne v. Nezhat,* 261 F.3d 1075, 1105 (11th Cir.2001) (internal citations and quotation omitted). When filing a pleading in federal court, an attorney certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and is not presented for any improper purpose. *Id.* (citations omitted). Thus, if, after dismissing a party's claim as baseless, the court finds that the party's attorney failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound. *Id.* at 1105–06. Rule 11 sanctions typically are levied against an attorney, but also may be issued against a party. *See id.* at 1106.

A second source of authority for the imposition of sanctions is 28 U.S.C. § 1927. Unlike Rule 11, which is aimed primarily at the pleadings, under Section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation. *Byrne,* 261 F.3d at 1106. Also unlike Rule 11, awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards. *Id.* (citation omitted). The Eleventh Circuit has held that there are three requirements for an award of sanctions pursuant to § 1927:

> First, the attorney must engage in "unreasonable and vexatious" conduct. Second, that "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings." Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

*Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1239 (11th Cir.2007) (quoting *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997)).

An attorney multiplies proceedings "unreasonably and vexatiously" within the meaning of the statute only when the attorney's conduct is so egregious that it is "tantamount to bad faith." *See Amlong & Amlong,* 500 F.3d at 1239 (quoting *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991)). For purposes of § 1927, bad faith turns not on the attorney's subjective intent, but on

4

the attorney's objective conduct. *See id.* at 1239. The term "unreasonably" necessarily connotes that the district court must compare the attorney's conduct against the conduct of a "reasonable" attorney and make a judgment about whether the conduct was acceptable according to some objective standard. *Id.* at 1239–40. The term "vexatiously" similarly requires an evaluation of the attorney's objective conduct. *Id.* at 1240 (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). At the same time, while objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be "unreasonabl[e] and vexatious" if it is done with a malicious purpose or intent. *See Amlong & Amlong*, 500 F.3d at 1240. It is with this framework in mind that I analyze the issues presented here.

Finally, Florida Rule of Professional Conduct 4-3.3(a)(1), states that a "lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal." The comment to this Rule states that "the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false." *Bautista v. Star Cruises*, 696 F. Supp. 2d 1274, 1278 (S.D. Fla. 2010) (quoting Fla. R. Prof'l Conduct 4-3.3, cmt.). In addition, Rule 4-3.3 "addresses a lawyer's obligation to disclose the controlling law." *Id.* As such, "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities." *Id.*

5

## DISCUSSION

a. *Lack of Candor in Meet and Confer*

Defendants argue that sanctions under Rule 11 and Florida Rule of Professional Conduct 4-3.3 are warranted based on Plaintiff's lack of candor during a meet and confer. This is a matter which I have already addressed in detail in a previous Order. (DE 74). Defendants have provided no new facts related to Plaintiff's alleged lack of candor. Given the attention devoted to this argument in my prior Order, it is sufficient to simply reiterate my conclusion that "Plaintiff's behavior was not deserving of sanctions." (DE 74).

b. *Judicial Estoppel*

Defendants argue that Plaintiffs wrongfully asserted claims that were obviously barred by the doctrine of judicial estoppel. However, judicial estoppel does not operate as broadly as Defendants claim. In describing the judicial estoppel doctrine, the United States Supreme Court states that "where a party assumes a certain position in a legal proceeding, and *succeeds in maintaining that position*, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)) (emphasis added). The Court goes on to state that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *Id.* at 750–51 (quotations omitted). Plaintiff did not succeed in *Kinon I*. Therefore, Plaintiff would almost certainly not be barred by the doctrine of judicial estoppel from bringing the present case.

*c. Collateral Estoppel*

Defendants argue that Plaintiffs wrongfully asserted claims that were obviously barred by the doctrine of collateral estoppel. Defendants are correct that Plaintiffs would be barred from relitigating issues that were actually and necessarily decided in the course of *Kinon I*. *Herrera v. Wyoming*, 139 S. Ct. 1686, 1711, 203 L. Ed. 2d 846 (2019) ("Issue preclusion applies only to questions actually and necessarily determined." (internal quotation omitted)).

However, it is not clear that the jury's decision in *Kinon I* foreclosed a subsequent suit against different Hyatt entities. The jury in *Kinon* I answered "YES" to the question "Do you find to a reasonable probability that Kinon suffered a loss?" The jury then answered "NO" to the question "Do you find a reasonable probability that the loss suffered by Kinon was caused by Hyatt Corporation's alleged act of infringement?" (*See Kinon I*, Case No. 18-cv-81065, DE 135). This leaves open the possibility that posting the pictures on hyatt.com caused a loss, but that loss was perpetrated by another entity, specifically one or more of the Defendants named in this case. This theory is supported by deposition testimony from *Kinon I*, which Plaintiff pointed to in its Response to Defendants HIC and HITS Motion to Dismiss. There, Hyatt Corporation's corporate representative stated that:

> in terms of the entity that actually manages the property site for international hotels, that's a separate entity, that's a Hyatt International subsidiary. While Hyatt Corporation is the entity that owns the domain name for hyatt.com, it works in conjunction with subsidiaries, and there are -- there is a Hyatt International subsidiary that actually is in charge for updating this particular property site.

Document 154-2 (12-13). Therefore, another entity *could* have conducted the infringing activity making it possible to bring a non-frivolous suit notwithstanding the doctrine of collateral estoppel.

Defendants further argue that Plaintiff demonstrated a lack of candor by arguing that issue preclusion must be mutual, when in fact mutuality is not a requirement for issue preclusion. Defendants are correct that non-mutual, offensive issue preclusion is an available form of

7

preclusion. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979). Defendants are also correct that Plaintiff misconstrued the law by stating in its Response in Opposition to Defendants' Motion to Alter Trial Date that "[t]he party invoking the doctrines of res judicata and collateral estoppel must prove, inter alia, they are identical to the parties in a previous suit or are in privity with the parties in the previous suit." (DE 39).[2]

However, a simple misstatement of the law, particularly on a fairly confusing point of law, is not in and of itself sanctionable conduct. Further, Plaintiff abandoned this argument in responding to Defendants' Motions to Dismiss, suggesting that Plaintiff's prior argument was a mistake rather than an attempt to mislead the court.

### d. Subject-Matter Jurisdiction, Personal Jurisdiction, and Venue

Finally, Defendants argue that Plaintiff should be sanctioned for failing to admit that it lacks jurisdiction. In so arguing, Defendants reiterate the argument from their Motions to Dismiss that federal copyright law has no extraterritorial effect. (DE 52; DE 64). Although this statement is generally true, Plaintiff is not seeking extraterritorial application of copyright laws. As Plaintiff explains in its Response of Defendants HIC and HITS's Motion to Dismiss:

> Certainly the U.S. Copyright Act does not apply extraterritorially, but Kinon does not seek extraterritorial application here. Rather, Kinon seeks application of U.S. Copyright Law to HIC and HITS actions here in the U.S. where HIC and HITS propagated the display of Kinon's Work on Hyatt's website to promote the sales of rooms at Hyatt Dalian to U.S. customers.

(DE 61). Given my previous discussion of collateral and judicial estoppel, this position is not unreasonable.

---

[2] While this statement is true regarding *res judicata*, it is not true for collateral estoppel.

8

    e. *Vexatious Tactics in Violation of 28 U.S.C. § 1927*

Defendants allege that Plaintiff acted in bad faith by 1) opposing Defendants' Motion to Alter and Motion to Dismiss (DE 39; DE 61), and 2) failing to agree to Defendants' Motion to Stay Merits Discovery (DE 62). As previously discussed, Plaintiff's position was not clearly foreclosed by collateral or judicial estoppel, and therefore Plaintiff was justified in opposing the Motion to Dismiss. As to the Motion to Alter and Motion to Stay Merits Discovery, sanctions are not appropriate when a party advocates for its preferred litigation schedule.

## CONCLUSION

Based upon the foregoing, and after careful consideration of the Parties written submissions and the applicable law, it is hereby **ORDERED AND ADJUDGED** that Defendants' Motion for Sanctions Under Rule 11, 28 U.S.C. § 1927, and Florida Rule of Professional Conduct 4-3.3 (DE 86) is **DENIED**.

**SIGNED** in Chambers at West Palm Beach, Florida, this _5_ day of December, 2019.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

9